AO 91 (Rev. 11/11) Criminal Complaint    AUSA Alejandro G. Ortega (312) 353-4129

**FILED**
9/26/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSE GUADALUPE CARDENAS-TRUJILLO

CASE NUMBER: 24 CR 456

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 25, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| **Count One**: Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally distributing a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance |
| **Count Two**: Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally possessing with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

/s/ Thomas J. Robertson
THOMAS J. ROBERTSON
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 26, 2024

_Maria Valdez_
*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, THOMAS J. ROBERTSON , being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since approximately July 2018. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that JOSE GUADALUPE CARDENAS-TRUJILLO ("CARDENAS") has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging CARDENAS with unlawful distribution of and possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offenses alleged in the complaint.

3. This affidavit is based on my training and experience, my personal knowledge and knowledge of the investigation, and information provided to me by other law enforcement agents, information provided by a confidential source, my review of text message conversations and review of public databases, and the training and experience of other law enforcement agents.

## I. FACTS ESTABLISHING PROBABLE CAUSE

4. As set forth in more detail below, on or about September 24, 2024, a confidential law enforcement source ("CS") arranged for the delivery of three kilograms of cocaine. In the early afternoon of September 25, 2024, CS met with CARDENAS, who delivered to CS and an undercover officer ("UC") three brick shaped packages containing suspected cocaine inside a black backpack.

5. Later that afternoon, CS contacted CARDENAS and ordered two more kilograms of cocaine and arranged to pay CARDENAS for the "fronted" cocaine he had delivered to CS earlier that day. CS then arranged a meeting with CARDENAS in the early evening of September 25, 2024 to receive the cocaine. Prior to the meeting, law enforcement approached CARDENAS as he was exiting his residence on S. Hoyne Avenue in Chicago, and recovered a bag containing two additional brick shaped packages containing suspected cocaine, which CARDENAS had just disposed of on the street.

6. After his arrest, CARDENAS waived his *Miranda* rights and gave a recorded statement to law enforcement in which he admitted to possessing and distributing cocaine in the Chicago area, including on that day. CARDENAS also gave consent to search his residence, where law enforcement recovered approximately 3 additional kilograms of suspected cocaine, which CARDENAS admitted was his.

### a. CS Arranges to Receive 3 Kilograms of Cocaine from CARDENAS

7. In or around June 2024, CS[1] explained to law enforcement that his/her family member, H.P., who does not live in the United States, had previously lived in Chicago before s/he was convicted of federal narcotics offenses and removed from the United States. CS explained that H.P. currently lives outside the United States but continues to coordinate and direct narcotics trafficking activities in the Chicago area using local narcotics traffickers and couriers. CS explained that H.P. communicates with CS through WhatsApp audio calls and text messages utilizing telephone number 52-******4256 ("H.P. Phone"), and that from time to time, H.P. tells CS about his/her narcotics trafficking activities and asks whether CS would be willing to help with those activities. At law enforcement's direction, CS told H.P. s/he would help.

8. On or about September 23, 2024, CS contacted law enforcement and informed them that H. P. had contacted him/her via WhatsApp audio call the previous day using the H.P. Phone. The call was not recorded. According to CS, during the conversation, H.P. told CS that a semi truck containing 15 kilograms of cocaine was bound for Kentucky, but for unknown reasons, the load was diverted to the Chicagoland area via Ohio and would arrive the following day. According to CS, H.P.

---

[1] CS has been working with law enforcement since approximately June 2024. CS is cooperating with law enforcement in the hopes of receiving consideration with respect to the resolution of pending federal charges related to the distribution of cocaine. CS is currently charged in DuPage County with possession of cocaine, DUI, and related charges. No promises have been to CS regarding the resolution of the pending criminal charges. Information provided by CS has been corroborated through preserved and recorded communications, surveillance, and the narcotics seizures described herein. Accordingly, law enforcement believes CS is a reliable source of information.

then asked CS whether CS would be interested in purchasing any of the kilograms of cocaine for $16,000 per kilogram. According to CS, CS agreed, and s/he and H.P. agreed that CS would receive 3 kilograms of cocaine for $48,000, and that the cocaine would be "fronted" to CS, meaning that CS would not have to pay for the cocaine at the time of receipt, but at a later time. According to CS, H.P. explained that another individual would be contacting CS to arrange for the cocaine delivery.

9. According to CS and at the direction of law enforcement, CS and H.P. communicated several times via WhatsApp audio call the following day, on or about September 24, 2024, regarding the delivery of the cocaine. The WhatsApp audio calls were not recorded. According to CS, during the calls, H.P. told CS that the kilograms would be arriving in Chicago around 5:00 p.m., but in a later conversation, explained that there were delays, and that the cocaine would not arrive in Chicago until later that night. According to CS, H.P. told CS that s/he (H.P.) would provide CS with an address where CS was to pick up the cocaine and contact information for the individual who was to deliver the cocaine.

10. According to WhatsApp text messages, at approximately 10:03 p.m., H.P. texted CS an address of a restaurant located on approximately the 4100 block of W. 47th Street, in Chicago. At approximately 11:05 p.m., H.P. texted CS a WhatsApp contact saved as "Josesanchez4723" with telephone number (872) 320-**** ("CARDENAS Phone"). According to CS and call history logs, slightly less than a half hour later, at approximately 11:28 p.m., CS called CARDENAS Phone and spoke with CARDENAS. The conversation was not recorded. According to CS, during the

conversation, CS and CARDENAS agreed to meet the following day, September 25, 2024, to complete the cocaine transaction. CARDENAS instructed the CS to call him when s/he was en route.

### b. CS Receives 3 Kilograms of Cocaine from CARDENAS on September 25, 2024

11. According to WhatsApp text messages, on or about September 25, 2024, at approximately 11:01 a.m., CS texted CARDENAS on CARDENAS Phone and told CARDENAS that s/he was on his/her way.[2] Prior to meeting with CARDENAS, CS met with law enforcement, who gave CS an audio recording device and checked CS for contraband, with negative results. CS then got into a car driven by an undercover officer ("UC")—which also contained audio recording equipment—and together CS and UC drove to the meet location to meet with CARDENAS.

12. According to WhatsApp text messages, at approximately 11:13 a.m., CARDENAS texted CS an address of "4927 s hoyne." CS responded that s/he was on his/her way. At the direction of law enforcement, CS then called CARDENAS and told him to meet him/her in the parking lot of a gymnasium located on approximately the 4600 block of S. Damen Avenue in Chicago.

13. According to CS, UC, and surveillance, at approximately 12:20 p.m., CARDENAS arrived at the meet location driving in a gray Toyota sedan. According to surveillance, UC, CS, and audio and video recordings, CARDENAS exited the front

---

[2] The WhatsApp text messages and audio recordings referred to in this affidavit were originally in Spanish. The translations in this affidavit are based on preliminary translations by agents with knowledge of the Spanish language, and the Spanish-speaking CS's interpretations.

5

driver seat of the gray Toyota holding a black backpack, then walked around his car to UC's vehicle where he opened the back passenger side door of UC's vehicle and placed the backpack on the seat. CARDENAS then put his head into the front passenger side window of UC's vehicle and had a brief recorded conversation with CS and UC, during which CS said, "Hey, I wanted to ask you…I'm going to take this to them now, and if the man is happy with it [the cocaine], then in about two hours I'm going to ask for two more."[3] According to CS and UC, CARDENAS replied to the effect of, "they're going to like it [the cocaine]." CARDENAS then re-entered the gray Toyota and drove away. Inside the black backpack, law enforcement recovered three brick shaped packages wrapped in rubber, cellophane, and tin foil. Law enforcement field tested one of the packages, which tested presumptively positive for cocaine.

### c. CARDENAS Distributes Two Additional Kilograms of Cocaine to CS on the Early Evening of September 25, 2024

14. After CARDENAS departed the meet location, law enforcement maintained physical surveillance on him.

15. Later in the afternoon of September 25, 2024, after CARDENAS distributed the three bricks of suspected cocaine to CS, CS called H.P. via recorded WhatsApp audio call and, in summary, told H.P. that her associates liked the cocaine, and asked H.P. whether he could broker another two kilograms of cocaine for CS

---

[3] My interpretations of certain words are in brackets in this affidavit. They are based on my training and experience, the training and experience of other law enforcement officers, the context of the conversation, physical surveillance, and information from CS and UC.

6

through CARDENAS. H.P. told CS that he would reach out to CARDENAS and be in touch.

16. A short time later, H.P. called CS back via recorded WhatsApp audio call and told her that CARDENAS would be able to deliver CS two additional kilograms of cocaine, and instructed CS to communicate directly with CARDENAS. According to CS and audio recordings, at approximately 4:11 p.m., CS made a recorded WhatsApp call to CARDENAS and stated, "Hey … um, those two [kilograms of narcotics], would they still be available?" CARDENAS responded, "Yes." A short time later, CS called CARDENAS back and confirmed that "I have the money for the three [kilograms], and he [H.P.] told me to get two [additional kilograms] from you. Call him [H.P.] if you want." CARDENAS replied, "He [H.P.] already called me … okay, sounds good." During a later recorded conversation, CS and CARDENAS agreed that they would meet at the same meet location where they had met earlier in the day, in the parking lot of a gymnasium located on approximately the 4600 block of S. Damen Avenue in Chicago, between 5:30 p.m. and 6:00 p.m.

17. Law enforcement, which was maintaining physical surveillance on CARDENAS, then followed him to a residence located at approximately the 4900 block of S. Hoyne Avenue, Chicago, IL 60609 (the "Residence"). According to physical surveillance, at approximately 5:25 p.m., CARDENAS went into the Residence briefly, then exited the Residence holding a black bag. At approximately 5:28 p.m., law enforcement approached CARDENAS as he was exiting his Residence and walking toward the gray Toyota. As law enforcement was approaching CARDENAS,

7

they observed him place the black bag on the street. Law enforcement asked CARDENAS what was in the bag, and he admitted there were narcotics in the bag. Law enforcement then seized the bag. Inside the bag, law enforcement recovered two additional brick like packages wrapped similarly to the packages law enforcement recovered earlier in the day. Law enforcement field tested one of the packages, which tested presumptively positive for cocaine. In total, the gross weight of the cocaine CARDENAS distributed and attempted to distribute to CS and UC on or about September 25, 2024 was approximately 8.004 kilograms.

18. Law enforcement then advised CARDENAS his *Miranda* rights, and he waived them and elected to speak with law enforcement. In summary, CARDENAS told law enforcement that there was more cocaine in the Residence, gave law enforcement consent to search the Residence, and signed a consent to search form. Inside the Residence, law enforcement recovered approximately 3 additional packages of a white powdery substance underneath a cabinet in the kitchen. According to field tests, these packages tested presumptively positive for cocaine.

19. Law enforcement then transported CARDENAS for processing. After being re-advised of and waiving his *Miranda* rights, CARDENAS gave an audio and video recorded statement and stated in summary as follows:

    a. CARDENAS has previously been convicted for possession of a kilogram of heroin and was removed from the United States;

    b. CARDENAS spent eight months in Mexico before paying a smuggler $8,000 to return him to the U.S. He had been living in Chicago for the past

few months and worked as a mechanic out of his garage and also dealt small amounts of cocaine to supplement his income;

  c. Approximately one week prior to his arrest, CARDENAS was contacted by "Primo" [H.P.] who asked if he could do him a favor, and explained that there was a load of cocaine in Kentucky that needed to be moved. CARDENAS agreed to move the cocaine for H.P., and in return would be "fronted" $16,000 for a kilogram of cocaine;

  d. On or about September 24, 2025, At H.P.'s instruction, CARDENAS sent a friend to pick up the load of cocaine from an unknown individual with a 915 area code at a truck stop in Demotte, Indiana, which CARDENAS learned after the pickup was approximately 8 kilograms. CARDENAS paid his friend $500 to pick up the cocaine for him, and explained he did so because he did not feel comfortable doing it himself;

  e. CARDENAS then communicated with H.P., who explained to CARDENAS that CARDENAS would then be handing off three kilograms of cocaine to CS the following day.

20. CARDENAS then confirmed the details of what law enforcement had observed earlier that day, during the two narcotics transactions with CS.

9

## II. CONCLUSION

21. Based on the foregoing, there is probable cause to believe that JOSE GUADALUPE CARDENAS-TRUJILLO distributed 500 grams or more of a mixtures and substance containing cocaine, and, subsequently, possessed with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

/s/ Thomas J. Robertson
THOMAS J. ROBERTSON
Special Agent, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone September 26, 2024.

Maria Valdez
Honorable MARIA VALDEZ
United States Magistrate Judge

10